464 So.2d 492 (1985)
Robert Allen LANNOM
v.
STATE of Mississippi.
No. 55405.
Supreme Court of Mississippi.
February 13, 1985.
Harry L. Kelley, Jackson, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Pat Flynn, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and SULLIVAN and ANDERSON, JJ.
*493 SULLIVAN, Justice, for the Court:
In the Circuit Court of Hinds County, Mississippi, Robert Allen Lannom was convicted of armed robbery of a drugstore. He was sentenced by the jury to life imprisonment. On appeal, he assigns as error:
1. Allowing state witnesses Britt and Bailey to identify defendant as the robber because a pretrial identification procedure was impermissibly suggestive.
2. Failure of the court to instruct the jury on an essential element of the crime charged, that the taking of the property was done with the intent to steal.
Neither assignment has merit. We affirm.

I.

WAS IT REVERSIBLE ERROR TO ALLOW WITNESSES BRITT AND BAILEY TO IDENTIFY LANNOM AS THE ROBBER BECAUSE OF A PRETRIAL IDENTIFICATION PROCEDURE THAT WAS IMPERMISSIBLY SUGGESTIVE?
On the night of September 18, 1982, when the armed robbery was committed at a Howard's Pharmacy on Clinton Blvd., in Jackson, Mississippi, pharmicist Harry Britt and a store employee, Scott Bailey, were present. Britt testified that during the robbery he watched the eyes and face of the robber, which was only partially concealed by a stocking. Britt testified that the robber held Bailey by the arm, pointing his pistol at Britt throughout the robbery. The entire event took approximately three minutes.
Britt testified that he personally confronted the robber in the store and was at times within two or three feet of him. The lights in the store were bright and Britt paid close attention to the robber to pick out distinctive characteristics. Britt identified Lannom in a police lineup and again in the courtroom as the robber. Britt based his identification on viewing Lannom the night of the robbery, and the fact that Lannom's nose flared to the side and there was a bulb on the front of the nose.
Scott Bailey, age 18, saw the robber almost the whole time because the robber held him by the arm. Bailey went to the lineup and identified Lannom as the person who robbed the store based upon his independent recollection from the night of the robbery. Bailey testified that neither the officers nor Britt tried to sway him in making his lineup identification. Britt and Bailey did not observe the lineup at the same time. Bailey positively identified the defendant as the robber at the trial.
Lannom first contends that he was the subject of an impermissibly suggestive showup when a Jackson police officer took him to the drugstore where Britt was working and gave Britt an opportunity to observe Lannom prior to the lineup. The salient facts regarding this contention are these: Lannom was arrested on October 14, 1982, in Tennessee, and brought with another person to Jackson four or five days later. Lannom was a suspect in connection with the murder of one Teresa Wade. This police investigation was well publicized. One of the features of the investigation consisted of Jackson police officers driving Lannom around the city of Jackson searching for a dumpster in which the police believed the body of Teresa Wade had been left.
On one such occasion detectives Wilson and Monroe drove Lannom to the front of the Howard Pharmacy that had been robbed. Officer Wilson went into the drugstore, leaving Lannom in the front seat and the other police officer in the rear seat of the unmarked police vehicle. Lannom's version of the events which followed was contradicted by three other witnesses. He testified that, as they approached, detective Wilson told him that he should recognize this drugstore because he robbed it. When Lannom denied this, Wilson went inside and brought two persons to the front window of the store to point Lannom out to them. Lannom said that one was a big man wearing a white hospital coat and the other was a teenager in bluejeans.
*494 Detective Monroe said that the officers had received a radio message to call their office and that, by coincidence, they pulled into the Howard's Pharmacy which Lannom was later charged with robbing. Monroe said that Wilson went in and Lannom bent his head down in the front passenger seat. Monroe denied the accuracy of Lannom's version of the facts.
Pharmacist Britt recalled detective Wilson's visit to the drugstore and admitted that he went to the front window to look at the unmarked police car. He said that Wilson mentioned that he was taking a murder suspect around to look at dumpsters, but denied that Wilson connected this suspect to the drugstore robbery. Britt said that the sun's glare on the car windows prevented him from identifying anyone in the police car.
The teenage cashier, Bailey, was not working in the store at the time the detectives drove up with Lannom.
Lannom's second contention is that the identification by Bailey and Britt was based in part upon the fact that his photograph had appeared in the newspaper in connection with the murder investigation and that later stories, unaccompanied by photographs, said he was a suspect in the drugstore robbery. Bailey and Britt admitted that they had seen the photographs in the newspaper. Bailey said that he agreed that the pictures looked "kind of like" the robber. Both stated, however, that their identification was not based on the photographs but upon an independent recollection from the night of the robbery.
The basic issue presented is whether the showup at the drugstore, coupled with the newspaper articles, were so highly suggestive and prejudicial that they corrupted the subsequent lineup and in-court identifications by the witnesses. In Bankston v. State, 391 So.2d 1005 (Miss. 1980), we noted that the United States Supreme Court has required that a charge of impermissible suggestiveness in identification procedures must be supported by the "totality of the circumstances". Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).
As noted above, Lannom's version of the allegedly improper showup was contradicted in several respects. Turner denied that the officers deliberately stopped at the drugstore to point Lannom out to Britt. Turner said that Lannom leaned down to conceal his face when they stopped in front of the building. Bailey was not present in the drugstore at the time when Lannom allegedly saw both Britt and Bailey looking at him from inside the drugstore. Britt said that he was unable to see well enough through the sun's glare to identify anyone in the police car.
In contrast, there is little dispute that both Britt and Bailey saw and discussed prior to the lineup the photographs of Lannom accompanying the murder investigation articles. Britt also read articles a few days later naming Lannom as a suspect in the drugstore robbery.
Assuming arguendo that Lannom's testimony about the showup and the newspaper photographs raise an issue of impermissible suggestiveness, the identifications by Britt and Bailey do not have to be excluded if upon consideration of the totality of circumstances there was no substantial likelihood of misidentification. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). In Bankston v. State, supra, we analyzed this issue using the factors set forth in Neil v. Biggers. These factors include:
(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation.
391 So.2d at 1008. See also, Scott v. State, 359 So.2d 1355 (Miss. 1978).
Applying this analysis to the case at bar shows the following:
(1) Britt and Bailey observed the robber for at least three minutes in a brightly lit *495 room. Britt was within a few feet of the robber and sometimes at arms' length and the robber held Bailey's arm during the entire time of the robbery.
(2) Both witnesses demonstrated a high degree of attention to the robber's actions and features. Britt stated that he paid close attention to the robber's face to pick out distinguishing characteristics. Britt watched the robber's eyes and face for response every chance he could since the robber had a gun aimed at him. Bailey stated that he watched the robber almost the whole time since the robber was holding him by the arm.
(3) Both witnesses gave prior descriptions which did not diverge materially from the defendant's actual appearance. Britt estimated Lannom's height at 5 foot 9 inches, while crouched, while Bailey gave a height of 6 feet tall. Both witnesses said the robber had blonde hair. Britt noticed the unusual shape of the robber's nose, flared with a bulb on the end.
(4) Both witnesses positively identified Lannom at the lineup and there had been no previous failure to identify the robber by either witness.
(5) The time between the robbery and the lineup identification was less than a month, from September 18, 1982, to October 13, 1982.
What this Court is called upon to determine is whether or not there was a substantial likelihood of misidentification.
Any possible taint arising from Lannom having been brought to the drugstore could only have affected Britt, since Bailey was not present. However, both Britt and Bailey saw the photographs of Lannom in the paper and agreed that the pictures resembled the robber.
Reviewing the totality of the circumstances, we find that there is no substantial likelihood that the witnesses have misidentified Lannom. They had ample opportunity and reason to remember his face; their descriptions to the police conformed generally with Lannom's actual appearance and they positively identified Lannom at the lineup. Finally, only a month elapsed between the crime and the lineup. Under the factors to be considered in Neil v. Biggers, the identifications need not be excluded and are reliable.
Lannom also complains that his attorney was not present at the preindictment lineup. We have consistently held that the right to counsel under the Sixth Amendment does not extend to preindictment lineups. Wilson v. State, 451 So.2d 718, 723 (Miss. 1984); Scott v. State, 359 So.2d 1355 (Miss. 1978). The first assignment of error is without merit.

II.

DID THE COURT IMPROPERLY FAIL TO INSTRUCT THE JURY ON AN ESSENTIAL ELEMENT OF THE CRIME, NAMELY, THAT THE TAKING OF THE PROPERTY WAS DONE WITH THE INTENT TO STEAL.
Lannom relies primarily upon Thomas v. State, 278 So.2d 469 (Miss. 1973), and Eakens v. State, 289 So.2d 687 (Miss. 1974). In Thomas, there was a real question of whether the defendant had the intent to permanently deprive the owner of his property since the defendant had taken a police car and the policeman's gun during an escape attempt. Id. at 473. Thomas is clearly distinguishable in that here there was no uncertainty that Lannom intended to permanently deprive Britt of the drugs and money taken on the night of the robbery.
In Eakens, an accomplice to the robbery of a drugstore challenged the state's jury instructions which did not specifically require a finding that the robbery was committed with the intent to steal. This Court quoted Baygents v. State, 154 Miss. 36, 39, 122 So. 187, 188 (1929), in response to the argument raised:
The word "rob" or "robbery" has a well-defined meaning and imports an intent to steal. Robbery is the feloniously taking of the property of another from his person or in his presence, against his will, by means of force or violence, or by *496 putting him in fear; and since the instruction here involved authorized the conviction only upon evidence from which the jury believed, beyond a reasonable doubt, that the appellants feloniously and violently did rob L.W. Pearson, etc., the failure to otherwise state the intent necessary to constitute the crime charged was not erroneous.
289 So.2d at 689.
Baygents v. State, supra, expressly recognized that the word "rob" or "robbery" has a well-defined meaning which includes an intent to steal. The instructions upheld in Eakens and Baygents allowed the jury to convict only upon evidence from which they could believe beyond a reasonable doubt that the defendant feloniously and violently robbed the victims.
It should be pointed out further that Lannom did not request an intent instruction nor did he object to the instruction on that ground at trial. Under Mississippi Supreme Court Rule 42, this assignment is procedurally barred. Pittman v. State, 297 So.2d 888 (Miss. 1974); Myers v. State, 268 So.2d 353 (Miss. 1972).
This assignment of error is also without merit.
The conviction and sentence of Robert Allen Lannom is, therefore, affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and ANDERSON, concur.